UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

TIMOTHY E. BROOME,               )
                                 )
                                 )   No. CV-11-0386-FVS
              Plaintiff,         )
                                 )
                                 )   ORDER GRANTING DEFENDANT'S
              v.                 )   MOTION FOR SUMMARY JUDGMENT
                                 )
                                 )
CAROLYN W. COLVIN, Commissioner  )
of Social Security,[1]           )
                                 )
                                 )
              Defendant.         )
                                 )
_____)

   **BEFORE THE COURT** are cross-motions for summary judgment noted
for hearing without oral argument.  (ECF No. 13, 16).  Attorney
Maureen J. Rosette represents plaintiff; Special Assistant United
States Attorney Summer Stinson represents the Commissioner of
Social Security (defendant).  After reviewing the administrative
record and the briefs filed by the parties, the Court **GRANTS**
defendant's Motion for Summary Judgment.

                          **JURISDICTION**

   Plaintiff filed applications for disability insurance
benefits (DIB) and supplemental security income (SSI) on March 18,

_____

   [1]As of February 14, 2013, Carolyn W. Colvin succeeded
Michael J. Astrue as Acting Commissioner of Social Security.
Pursuant to Fed.R.Civ.P. 25(d), Commissioner Carolyn W. Colvin
is substituted as the defendant, and this lawsuit proceeds
without further action by the parties.  42 U.S.C. § 405(g).

2010, alleging disability as of September 12, 2003 (Tr. 149-163).
Plaintiff amended his alleged onset date from September 12, 2003,
to January 1, 2007, at the administrative hearing (Tr. 48-49). The
applications were denied initially and on reconsideration.

Administrative Law Judge (ALJ) Marie Palachuk held a hearing
on December 9, 2010 (Tr. 43-78).  The ALJ issued an unfavorable
decision on January 7, 2011 (Tr. 16-30), and the Appeals Council
denied review on August 25, 2011 (Tr. 1-6).  The ALJ's decision
became the final decision of the Commissioner, which is appealable
to the district court pursuant to 42 U.S.C. § 405(g).  Plaintiff
filed this action for judicial review on October 7, 2011.  (ECF
Nos. 2 & 4).

                        **STATEMENT OF FACTS**

The facts have been presented in the administrative hearing
transcript, the ALJ's decision, and the briefs of the parties.
They are only briefly summarized here.

Plaintiff was born on April 9, 1968, and was 40 years old at
the time of the alleged onset date (Tr. 59).  At the
administrative hearing, plaintiff testified he was divorced, had
no children, and lived in a clean and sober housing facility (Tr.
59, 63-64).  Plaintiff had obtained his GED and had attended
almost one full year of community college classes (Tr. 60).  His
sole source of income at the time was public assistance (Tr. 68).

Plaintiff indicated he stopped working in 2006 because his
employment was terminated following a failed drug test (Tr. 62).
Plaintiff testified he had not used methamphetamine since November
of 2007 and had not consumed alcohol for almost 18 months prior to
the December 9, 2010 hearing (Tr. 62-63).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 2

1  Plaintiff testified he had hepatitis which caused fatigue and
2  required him to take daily naps normally lasting an hour or two
3  (Tr. 64).  However, he was not receiving treatment for hepatitis,
4  nor was there an established plan with his doctor to follow up on
5  the diagnosis.  He described his sleep at night as "atrocious"
6  with terrible nightmares five to ten times each night (Tr. 65).
7  Plaintiff also stated he does not do well in the public and has
8  issues with fear, anger and irritability (Tr. 65-66).  Plaintiff
9  was additionally taking medication for depression and anxiety at
10 the time (Tr. 66-67).

11  Plaintiff testified he spends his days watching television
12 and hanging out with his girlfriend (Tr. 68).  He was additionally
13 performing about five hours of maintenance work around his
14 facility each week (Tr. 68).  Plaintiff indicated he attended
15 Alcoholic's Anonymous meeting twice a week (Tr. 69).

16 **SEQUENTIAL EVALUATION PROCESS**

17  The Social Security Act (the Act) defines disability as the
18 "inability to engage in any substantial gainful activity by reason
19 of any medically determinable physical or mental impairment which
20 can be expected to result in death or which has lasted or can be
21 expected to last for a continuous period of not less than twelve
22 months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The Act also
23 provides that a plaintiff shall be determined to be under a
24 disability only if any impairments are of such severity that a
25 plaintiff is not only unable to do previous work but cannot,
26 considering plaintiff's age, education and work experiences,
27 engage in any other substantial gainful work which exists in the
28 national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 3

Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if the person is engaged in substantial gainful activities. If so, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I). If not, the decision maker proceeds to step two, which determines whether plaintiff has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

If plaintiff does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares plaintiff's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, plaintiff is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents plaintiff from performing work which was performed in the past. If a plaintiff is able to perform previous work, that plaintiff is deemed not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, plaintiff's residual functional capacity (RFC) is

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 4

considered.  If plaintiff cannot perform past relevant work, the
fifth and final step in the process determines whether plaintiff
is able to perform other work in the national economy in view of
plaintiff's residual functional capacity, age, education and past
work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v);
*Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon plaintiff to establish
a *prima facie* case of entitlement to disability benefits.
*Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v.
Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  The initial burden is
met once plaintiff establishes that a physical or mental
impairment prevents the performance of previous work.  The burden
then shifts, at step five, to the Commissioner to show that (1)
plaintiff can perform other substantial gainful activity and (2) a
"significant number of jobs exist in the national economy" which
plaintiff can perform.  *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th
Cir. 1984).

### STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a
Commissioner's decision.  42 U.S.C. § 405(g).  A Court must uphold
the Commissioner's decision, made through an ALJ, when the
determination is not based on legal error and is supported by
substantial evidence.  *See Jones v. Heckler*, 760 F.2d 993, 995
(9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir.
1999).  "The [Commissioner's] determination that a plaintiff is
not disabled will be upheld if the findings of fact are supported
by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572
(9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)).  Substantial evidence

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT – 5

is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan,* 877 F.2d 20, 22 (9th Cir. 1989) (*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 6

**DAA ANALYSIS**

An otherwise disabled individual is not entitled to disability benefits under the Act if drug addiction or alcoholism (DAA) is a contributing factor material to disability.  The Contract With America Advancement Act of 1996, Pub. L. No. 104-121 § 105(a)9C), amended the definition of disability under the Act to prohibit entitlement to disability benefits under Titles II and XVI for any individual whose disability is based on DAA.  Title II of the Act now states:  "An individual shall not be considered to be disabled for purposes of this title if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled."  42 U.S.C. § 423(d)(2)(c).  Title XVI of the Act contains a similarly worded provision for purposes of determining eligibility for SSI disability benefits.  42 U.S.C. § 1382c(a)(30)(J).

The Commissioner's disability regulations likewise state, "if we find that you are disabled and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability."  20 C.F.R. § 416.935(a). Specifically, the "key factor" the Commissioner "will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether we would still find you disabled if you stopped using drugs or alcohol."  20 C.F.R. § 416.935(b).  "If we determine that your remaining limitations would not be disabling, we will find that ///

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 7

your drug addiction or alcoholism is a contributing factor material to the determination of disability." *Id*.

If the ALJ finds the claimant disabled and there is medical evidence of DAA, the ALJ must determine the materiality of the claimant's DAA to his disability.  The ALJ must perform the sequential evaluation process a second time, separating out the impact of the claimant's DAA, to determine if he would still be found disabled if he stopped using drugs or alcohol.  *Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001).  The claimant bears the burden of proving that DAA is not a contributing factor material to his disability.  *Parra v. Astrue*, 481 F.3d 742, 744-745, 748 (9th Cir. 2007).

### ALJ'S FINDINGS

At step one, the ALJ found plaintiff has not engaged in substantial gainful activity since January 1, 2007, the amended alleged onset date (Tr. 19).  At step two, she found plaintiff had severe impairments of "adjustment disorder, alcohol dependence, and amphetamine dependence" (Tr. 19).  At step three, the ALJ found plaintiff's impairments, including the substance use disorder, met sections 12.04 and 12.09 of the listed impairments in 20 C.F.R., Appendix 1, Subpart P, Regulations No. 4 (Tr. 24). However, the ALJ then assessed plaintiff's impairments if he stopped the substance use and determined that his impairments, alone and in combination, did not meet or medically equal one of the listed impairments in 20 C.F.R., Appendix 1, Subpart P, Regulations No. 4 (Tr. 25).

The ALJ assessed plaintiff's RFC if he stopped the substance use and concluded that plaintiff could perform a full range of

work at all exertional levels, but with the following
nonexertional limitations:  he is capable of understanding,
remembering and carrying out simple and more complex
instructions/tasks and contact with the public and coworkers
should be limited to minimal and superficial (Tr. 26).  The ALJ
found that plaintiff's medically determinable impairments could
reasonably be expected to produce his alleged symptoms but that
plaintiff's statements concerning the intensity, persistence and
limiting effects of those symptoms were not credible to the extent
they were inconsistent with the ALJ's RFC assessment (Tr. 27).

       At step four, The ALJ found that if plaintiff stopped the
substance use, he would be able to perform his past relevant work
as a material handler, construction worker I, band rip saw
operator, and disk sander (TR. 29-30).  The ALJ thus determined
that plaintiff was not under a disability within the meaning of
the Act at any time through the date of her decision (Tr. 30).
The ALJ indicated that since she found that plaintiff would not be
disabled if he stopped the substance use, plaintiff's substance
use disorder was a contributing factor material to the
determination of disability (Tr. 30).

                              **ISSUES**

       Plaintiff contends he is more limited from a psychological
standpoint than what was determined by the ALJ.  (ECF No. 14 at 9-
13).  Plaintiff specifically argues the ALJ erred by failing to
properly consider the opinions of certain examining medical
sources and instead relying on the opinions of a non-treating,
non-examining medical professional when determining plaintiff's
mental RFC.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 9

**DISCUSSION**

**I.   Plaintiff's Credibility**

While plaintiff has not challenged with specificity the ALJ's finding that plaintiff is not fully credible,[2] the undersigned finds the ALJ's credibility determination significant in this case.

The ALJ indicated several reasons why plaintiff was not entirely credible (Tr. 28).  In addition to inconsistencies between plaintiff's statements and the objective medical evidence,[3] the ALJ noted the following record evidence which

---

[2]Plaintiff provides one sentence in his memorandum which states, "Mr. Broome; further, does not believe that the ALJ properly considered nor rejected Broome." (ECF No. 14 at 11-12). Plaintiff, however, fails to provide any support or authority for this assertion.  *See Paladin Assocs., Inc. v. Mont. Power Co.*, 328 F.3d 1145, 1164 (9th Cir. 2003) (noting that we "ordinarily will not consider matters on appeal that are not specifically and distinctly argued in an appellant's opening brief").

[3]The ALJ outlined plaintiff's inconsistent reports of drug use and sobriety (Tr. 28).  Plaintiff reported in February 2005 he had been off of drugs since December 2004 and off of alcohol for over six years; March 2005 emergency room records indicate he presented for detoxification after drinking heavily for several days and it was noted he had been clean for 14 months; in April 2005 it was noted he had one alcohol binge since undergoing a drug addiction program; also in April 2005 he presented for alcohol and heroin withdrawal and it was noted he drank heavily everyday; in April 2006 it was noted he last used methamphetamine two months prior; on August 23, 2006, he reported last using methamphetamine in July 2006; on September 3, 2007, it was noted he drinks alcohol and uses methamphetamine; on February 20, 2009, he indicated he last used alcohol in February 2008 and last used methamphetamine in November 2007; on May 16, 2009, he presented after trying to get drunk by drinking hand sanitizer; and he stated in his appeal that he had relapsed on pain pills on April 24, 2010.  Not only does the foregoing evidence inconsistencies with plaintiff's drug and alcohol reporting, it also demonstrates that plaintiff has used alcohol and illicit drugs during the period of time following his alleged onset date.

suggested plaintiff had engaged in malingering and exaggeration:
on the Beck Depression Inventory his score indicated over-
reporting of depressive symptoms; his profile on the MMPI-2 was
invalid suggesting he was over-reporting negative and pathological
symptoms; and Dr. McKnight testified the PAI established a form of
symptom magnification (Tr. 28).

The ALJ's determination that plaintiff's statements were not
fully credible is thus supported by the evidence of record in this
matter.  Since plaintiff was properly found by the ALJ to be not
entirely credible, the ALJ appropriately accorded little weight to
medical reports based primarily on his subjective complaints.  *See*
*Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (a
physician's opinion premised primarily on a claimant's subjective
complaints may be discounted where the record supports the ALJ's
discounting of the claimant's credibility); *Morgan v. Comm'r. of*
*Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (the opinion
of a physician premised to a large extent on a claimant's own
account of symptoms and limitations may be disregarded where they
have been properly discounted).

**II.   Mental Limitations**

Plaintiff argues that limitations assessed by W. Scott Mabee,
Ph.D., and John Arnold, Ph.D., reflect greater restrictions from a
psychological standpoint than assessed by the ALJ, and the ALJ
erred by not according these medical professionals greater weight.
(ECF No. 14 at 8-13).  Plaintiff argues the ALJ erred by instead
according significant weight to the opinions of the medical
expert, R. Thomas McKnight, Ph.D., when assessing his mental
limitations.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 11

In a disability proceeding, the courts distinguish among the opinions of three types of physicians:  treating physicians, physicians who examine but do not treat the claimant (examining physicians) and those who neither examine nor treat the claimant (nonexamining physicians).  *Lester v. Chater*, 81 F.3d 821, 839 (9th Cir. 1996).  The Ninth Circuit has held that "[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Lester*, 81 F.3d at 830.  Rather, an ALJ's decision to reject the opinion of a treating or examining physician, may be *based in part* on the testimony of a nonexamining medical advisor.  *Magallanes*, 881 F.2d at 751-55; *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).  The ALJ must also have other evidence to support the decision such as laboratory test results, contrary reports from examining physicians, and testimony from the claimant that was inconsistent with the physician's opinion.  *Magallanes*, 881 F.2d at 751-52; *Andrews,* 53 F.3d 1042-43.  Moreover, an ALJ may reject the testimony of an examining, but nontreating physician, in favor of a nonexamining, nontreating physician only when he gives specific, legitimate reasons for doing so, and those reasons are supported by substantial record evidence.  *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995).

Dr. McKnight testified as a medical expert at the administrative hearing (Tr. 49-58).  Dr. McKnight stated the records reflect plaintiff has serious problems with alcohol and amphetamine dependence (Tr. 49).  He indicated Dr. Mabee's September 2009 notations of marked limitations and social problems

were directly at odds with the narrative report and treatment notes which describe plaintiff in fairly positive terms (Tr. 50). He also indicated the MMPI profiles completed in February 2009 and March 2010 were grossly invalid because of over reporting by plaintiff (Tr. 51). Dr. McKnight testified that the recent treatment notes from the Family Youth Adult Connections reflected plaintiff was living with his girlfriend and doing maintenance work and suggested plaintiff was doing well with being sober (Tr. 52). Dr. McKnight testified that absent the impact of the alcohol and drug abuse, plaintiff seemed to be doing reasonably well (Tr. 52-53). Dr. McKnight specifically opined that absent the impact of drugs and alcohol plaintiff's restrictions of activities of daily living would be mild, restrictions of social functioning would be mild, difficulties maintaining concentration, persistence and pace would be mild, and there would be no episodes of decompensation (Tr. 53). The ALJ accorded Dr. McKnight's opinion significant weight (Tr. 29).

As noted above, "[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Lester*, 81 F.3d at 830. In this case, while the ALJ accorded significant weight to the testimony of the medical expert, substantial evidence in addition to Dr. McKnight's testimony justifies the ALJ's rejection of those portions of medical reports which are not consistent with the ALJ's RFC determination. *See infra*.

On December 9, 2008, Steven E. Erickson, M.Ed., LMHC, under the supervision of Dr. Mabee, examined plaintiff while he was

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 13

incarcerated at the Geiger Correctional Center (Tr. 261-264, 272-276).  Plaintiff reported difficulty obtaining and keeping a job because of drug and alcohol abuse, and it was noted plaintiff had spent a total of one and a half years in jail for second degree robbery (Tr. 272-273).  Plaintiff was diagnosed with dysthymic disorder and ETOH and Amphetamine abuse in early full remission (Tr. 275)  Plaintiff was given a GAF score of 55[4] (Tr. 275).  It was opined that plaintiff should be capable of addressing more complex cognitive requirements in the absence of methamphetamine and alcohol abuse and that he appeared capable of employment should he receive the necessary treatment for his methamphetamine and alcohol abuse (Tr. 275).  Mr. Erickson additionally filled out a Psychological/Psychiatric Evaluation form and checked boxes indicating that plaintiff had moderate limitations in his abilities to exercise judgment and make decisions, respond appropriately to and tolerate the pressures and expectations of a normal work setting, and control physical or motor movements and maintain appropriate behavior (Tr. 263).

On February 20, 2009, plaintiff was examined by Amy Robinson, MS, under the supervision of Dr. Mabee (Tr. 265-271, 277-280). Plaintiff reported he was unable to work due to fear of using methamphetamine and felt little ambition or interest to do things (Tr. 266, 269).  On testing, over-reporting of depressive symptoms was indicated and the MMPI-2 was invalid suggesting the over-reporting of negative and pathological symptoms (Tr. 268).

---

[4]A GAF of 60-51 reflects: Moderate symptoms or moderate difficulty in social, occupational, or school functioning.  *See* DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32 (4th ed. 1994).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 14

Plaintiff was diagnosed with adjustment disorder with mixed anxiety and depressed mood, alcohol abuse in sustained full remission, and amphetamine abuse in sustained full remission and given a GAF score of 55-60 (Tr. 268). It was opined that plaintiff should be able to understand and follow simple as well as more complex verbal and written instructions, he may have minor difficulties with concentration and memory, and his persistence and pace on a given task would be average, but as the tasks increase in demand, persistence and pace would decrease proportionately to the task (Tr. 269). Ms. Robinson additionally filled out a Psychological/Psychiatric Evaluation form and checked boxes indicating that plaintiff had several moderate limitations in his functional abilities (Tr. 279).

On September 1, 2009, Dr. Mabee examined plaintiff (Tr. 324-333). It was noted that plaintiff had been placed in a psychiatric facility a few months prior to the exam for observation until his blood alcohol level was lowered enough to be transferred to a detox facility (Tr. 324). Dr. Mabee diagnosed alcohol dependence in early full remission (per patient report), amphetamine abuse in sustained full remission (per patient report), and adjustment disorder with mixed anxiety and depressed mood and gave plaintiff a GAF score of 56 (Tr. 326). Despite a GAF score indicative of only moderate symptoms, Dr. Mabee opined plaintiff would have marked limitations with his ability to relate appropriately to coworkers and supervisors, interact appropriately in public contacts, respond appropriately to and tolerate the pressures and expectations of a normal work setting, and maintain appropriate behavior in a work setting (Tr. 327). However, Dr.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 15

Mabee also opined plaintiff would be capable of working without supervision, could understand and carry out simple tasks with little difficulty, should be able to do more complex tasks efficiently with extended periods of sobriety, would be able to sustain concentration for longer periods of time, would perform better in positions that had minimal contact with others (at least until his symptoms are stable and he has maintained sobriety) and is capable of recognizing hazards and taking appropriate precautions (Tr. 327).  Dr. Mabee expected plaintiff to be impaired to the degree indicated for six to nine months (Tr. 328).

On March 26, 2010, plaintiff was evaluated by Dr. Arnold (Tr. 336-345).  On testing, Dr. Arnold noted that plaintiff's MMPI-2 profile was invalid due to over reporting psychopathology (Tr. 341).  Nevertheless, Dr. Arnold diagnosed alcohol dependence in early full remission (per patient report), amphetamine abuse in sustained full remission (per patient report), and adjustment disorder with mixed anxiety and depressed mood and gave plaintiff a GAF score of 57 (Tr. 338).  Inconsistent with his assessed GAF score, Dr. Arnold opined plaintiff would have a marked limitation with his ability to maintain appropriate behavior in a work setting (Tr. 339).  However, Dr. Arnold also opined plaintiff would be capable of understanding and carrying out simple and moderately complex instructions, could only concentrate for short periods of time if he is in a social situation, could work without close supervision and make work-related decisions, would work better in positions that have minimal contact with others, could ask necessary questions, and could recognize hazards and take appropriate precautions (Tr. 339).  Dr. Arnold expected plaintiff

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 16

to be impaired to the degree indicated for six to nine months (Tr. 328).

     In this case, the ALJ concluded that if plaintiff stopped the substance use, he would be able to perform jobs requiring understanding, remembering and carrying out simple and more complex instructions/tasks, but his contact with the public and coworkers should be limited to minimal and superficial (Tr. 26). The ALJ indicated that if plaintiff stopped the substance use, he would have a mild restriction in activities of daily living, mild difficulties in social functioning, moderate difficulties in concentration, persistence and pace[5], and no episodes of decompensation (Tr. 25). Accordingly, contrary to plaintiff's argument, the ALJ's RFC determination is essentially consistent with the above medical reports which generally reflect moderate limitations, an ability to understand and carry out simple tasks with little difficulty, the ability to do more complex tasks efficiently with sobriety, and the opinion that plaintiff would work better in positions that have minimal contact with others. *See supra*.

     Only the check-box reports of Drs. Mabee and Arnold, which indicate some marked limitations, are inconsistent with the ALJ's mental RFC determination in this case. However, as discussed by the ALJ, the findings indicated on those check-box forms contradict the narrative reports of Drs. Mabee and Arnold which reflect only mild to moderate limitations and indicate plaintiff

_____

[5]By finding plaintiff to be moderately limited in his concentration, persistence and pace, the ALJ determined plaintiff was limited to a greater extent than as assessed by Dr. McKnight.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 17

is able to understand and carry out simple tasks with little difficulty and should be able to do more complex tasks efficiently with extended periods of sobriety (Tr. 29).  Moreover, also as noted by the ALJ, the reports which indicate marked limitations estimate that the length of time plaintiff would be impaired to this degree would only be six to nine months (Tr. 29).  The limitations would thus not meet the duration requirements of the Act (one year).  42 U.S.C. § 1382c(a)(3)(A).  Finally, as discussed above, since plaintiff was properly found by the ALJ to be not entirely credible, it was appropriate for the ALJ to accord little weight to medical reports based primarily on plaintiff's subjective complaints, and the MMPI profiles completed in February 2009 and March 2010 were deemed invalid because plaintiff had over reported psychopathology.

It is the responsibility of the ALJ to determine credibility, resolve conflicts in medical testimony and resolve ambiguities. *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996).  The Court has a limited role in determining whether the ALJ's decision is supported by substantial evidence and may not substitute its own judgment for that of the ALJ even if it might justifiably have reached a different result upon de novo review.  42 U.S.C. § 405(g).  Where, as here, the ALJ has made specific findings justifying a decision, and those findings are supported by substantial evidence in the record, our role is not to second-guess that decision.  *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989).  Based on the foregoing, the ALJ did not err by rejecting those portions of medical reports which are not consistent with the ALJ's RFC determination and for according weight to the

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 18

opinions of the medical expert, Dr. McKnight.  Those reasons are supported by substantial record evidence.  *Roberts*, 66 F.3d at 184.  The substantial weight of the record evidence supports the ALJ's mental RFC determination as well as her ultimate conclusion in this case.

### CONCLUSION

Having reviewed the record and the ALJ's findings, the Court determines that the ALJ's decision is free of legal error and supported by substantial evidence.  Accordingly,

**IT IS HEREBY ORDERED:**

1.  Defendant's Motion for Summary Judgment (**ECF No. 16**) is **GRANTED.**

2.  Plaintiff's Motion for Summary Judgment (**ECF No. 13**) is **DENIED.**

**IT IS SO ORDERED.**  The District Court Executive is directed to file this Order, provide copies to the parties, enter judgment in favor of Defendant, and **CLOSE** this file.

**DATED** this   27th   day of March, 2013.

S/Fred Van Sickle
Fred Van Sickle
Senior United States District Judge